U.S. DISTRICT COURT
**N.D. OF N.Y.**
**FILED**

MAY 1 0 2006

LAWRENCE K. BAERMAN, CLERK
ALBANY

## NORTHERN DISTRICT OF NEW YORK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**$1,073,200.00 IN UNITED STATES CURRENCY,**

**Defendant.**

**Civil No. 06-CV-0578
(NAM /GJD)**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### VERIFIED COMPLAINT OF FORFEITURE IN REM

The United States of America, by its attorney, Glenn T. Suddaby, United States Attorney for the Northern District of New York, and Thomas A. Capezza, Assistant United States Attorney, for its verified complaint herein alleges on information and belief as follows:

### NATURE OF ACTION

1.      This is a civil *in rem* action brought to enforce the provisions of 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(c), and 21 U.S.C. § 881(a)(6). The United States of America seeks the forfeiture of $1,073,200.00 in United States currency, based upon reasonable cause to believe the property constitutes or is traceable to:

    a.   proceeds furnished or intended to be furnished in exchange for controlled

substances or which was used to facilitate felony violations of 21 U.S.C. §§ 841(a)(1) and § 846;

b. property involved in money laundering transactions or attempted transactions in violation of 18 U.S.C. §§1956(a)(1)(A)(I), or 1956(a)(1)(B)(I); and

c. proceeds of some other form of specified unlawful activity set forth in 18 U.S.C. § 1956(c)(7).

## JURISDICTION

2. Plaintiff brings this action in rem in its own right to forfeit and condemn the defendant currency under Title 18 United States Code Sections 981(a)(1)(A) and 981(a)(1)(c), and 21 United States Code Section 881(a)(6). This Court has jurisdiction over this action pursuant to Title 28 United States Code Sections 1345 and 1355.

## VENUE

3. Venue is proper in this District pursuant to Title 28 United States Code Sections 1355 and 1395, and Title 21 United States Code Section 881(j) because one or more of the acts or omissions giving rise to the forfeiture occurred in this district.

## DEFENDANT IN REM

4. The defendant consists of the following property: United States funds in the amount of $1,073,200.00, which were taken into custody by the Bryan County [Georgia] Sheriff's Department and subsequently seized on land by the Drug Enforcement Administration.

## FACTS

5. The facts alleged in this complaint are based upon information and belief, the sources of which are reports from the Drug Enforcement Administration, the Bryan County [Georgia] Sheriff's Department and other written and oral information officially received by the

Office of the United States Attorney for the Northern District of New York.

**BASIS FOR FORFEITURE**

**A.    THE STOP, DETENTION AND SEIZURE.**

6.    On September 9, 2005, Lt. David Blige ("Lt. Blige") of the Bryan County, [Georgia] Sheriff's Office, while working traffic on Interstate I-95 and traveling southbound at approximately 12:07 a.m., observed a gray Chevrolet Silverado, bearing New York license plate No. DGF9952 ("vehicle"), weaving over the roadway. Lt. Blige stopped the vehicle at mile marker 81.

7.    Lt. Blige approached the vehicle and requested the driver, later identified as Jerome Honeyoust Rockwell ("Rockwell") of Nedrow, Northern District and State of New York, to step to the rear of the vehicle.

8.    While Lt. Blige examined Rockwell's driver's license, Rockwell stated that he was traveling from New York to Miami, Florida, to meet his wife.

9.    Rockwell informed Lt. Blige that he and his wife had been separated for four years and that they were attempting to work out the differences in their relationship.

10.    Lt. Blige advised Rockwell that he was stopped because he was weaving over the roadway and asked Rockwell if he was tired.

11.    Rockwell stated that he was tired, but was trying to reach Jacksonville, Florida, before stopping and resting for the night.

12.    After Lt. Blige returned Rockwell's driver's license, he informed Rockwell that persons traveling on I-95 are known to transport explosives, guns, drugs and large sums of U.S. currency in their vehicles and asked Rockwell if he was carrying any of those items in his vehicle, to which Rockwell replied no. Lt. Blige then asked Rockwell for consent to search the

vehicle and its contents.  Rockwell consented to the search and proceeded to open the cab of the bed of the pickup truck.

13.    Lt. Blige then searched the bed of the pickup truck while Deputy Lee Walker of the Bryan County Sheriff's Office, who had arrived on the scene, searched the passenger compartment.

14.    During the search of the vehicle, Deputy Walker located a sum of U.S. currency in the center console of the passenger compartment of the vehicle.  According to Rockwell, the currency found in the center console totaled approximately $35,000.

15.    Lt. Blige then asked Rockwell several times if the vehicle contained additional U.S. currency.  Rockwell denied having any additional U.S. currency in the vehicle.

16.    Lt. Blige then located a green suitcase which, according to Rockwell, contained over $1,000,000.00.  Rockwell claimed the currency was his personal money.

17.    Lt. Blige advised Rockwell that the U.S. currency located in the center console of the vehicle and the green suitcase were being seized and asked Rockwell to follow him to the Bryan County Sheriff's Office and Rockwell complied.

18.    On September 9, 2005, after Lt. Blige took possession of the U.S. currency, Cpl. Meacham ("Cpl. Meacham") of the Bryan County [Georgia] Sheriff's Office interviewed Rockwell at the Bryan County Sheriff's Office in Richmond Hill, Georgia.

19.    During the interview, Rockwell stated that he was traveling from New York to Miami, Florida, to get back together with his wife, whom he had been away from for four years. When Cpl. Meacham asked Rockwell where he obtained the U.S. currency, Rockwell replied that he was a medicine man and that the U.S. currency was from donations he received as a result of his ability to heal people.  Rockwell also stated that he and his wife owned a jewelry store in New York by the name of Kay & Jerome's Indian Crafts.

20.    Rockwell also gave a voluntary written statement in which he stated that he is a native-American and that he does medicine work for people. Rockwell also stated that the business known as Kay & Jerome's Indian Crafts had been sold. Data base checks by DEA Asset Forfeiture personnel, however, show no records of any kind for "Kay and Jerome's Indian Crafts" anywhere in New York State.

21.    Cpl. Meacham conducted a five-bag test with his K-9 partner. A five-bag test entails having five bags, one of which has the subject defendant currency, and the other four bags are arranged to look just like the bag containing the defendant currency. The K-9 alerted on the bag containing the defendant currency, which is an indication that the K-9 detected the scent or presence of a controlled substance.

22.    Upon information and belief, the denominations of the $1,073,200.00 in U.S. currency were: 9,114 x $100; 3,022 x $50; 545 x $20; and 35 x $10.

23.    It is common for drug traffickers and individuals involved in money laundering activities to carry large amounts of currency in denominations of $100, $50, and $20.

**B.    DEBRIEFINGS OF DEFENDANT SOURCES OF INFORMATION.**

24.    Through his claim, ROCKWELL maintains that a portion of the defendant currency constituted "contributions" from Louise C. White ($50,000), Aaron Phillips ($50,000) and Donald and Debra Smoke ($70,000), from Hogansburg, in the Northern District and State of New York. Hogansburg is located on the Akwesasne Indian reservation. ROCWELL produced letters purportedly from each of these three people, in which they claim they contributed this money. Two of these letters appear to have been typed from the same word processor. One of these three letters are not signed. As noted in more detail below, at least two of these individuals are believed to have substantial ties to a major marijuana trafficking network that is headquartered on the Akwesasne Reservation.

25.     On August 3, 2005 your affiant interviewed CS-1. CS-1 advised that Roger COOK was a MARIJUANA distributor on the Onondaga Indian Nation and had connections to large suppliers of MARIJUANA in Canada. CS-1 began purchasing 10 to 20 pounds at a time from Roger COOK. As CS-1's customer base grew, in early 2004, Roger COOK accompanied CS-1 to the Akwesasne Indian Reservation and introduced CS-1 to William Hank COOK and Thomas COOK. CS-1 began to purchase larger quantities of MARIJUANA from William Hank COOK from 2004 up until his arrest in July 2005. CS-1 admitted that he was purchasing 1 million dollars in marijuana per month from William COOK. William COOK and Thomas COOK have been indicted in the Northern District of New York for MARIJUANA Distribution.

26.     Also in August 2005, your affiant interviewed CS-2 relative to the same MARIJUANA Organization. CS-2 advised that he and CS-1 were introduced to their MARIJUANA source of supply, William Hank COOK through Roger COOK.

27.     On May 5, 2006, your affiant interviewed CS-3 relative to MARIJUANA trafficking and cigarette smuggling on the Akwesasne Mohawk Reservation. CS-3 was shown a photo copy of Jerome ROCKWELL's passport picture. CS-3 stated that he knew who the person was and that he was not from the Akwesasne Tribe. CS-3 thought that he was from "Down South" and indicated that he may have been from the Onondaga Indian Tribe originally. CS-3 stated that ROCKWELL was dating Bonnie SQUARE and was sure that both were involved in the trafficking of narcotics. Furthermore, CS-3 stated that ROCKWELL was connected to Roger COOK and that they were attempting to start up a cigarette factory on the Akwesasne Mohawk Reservation. CS-3 stated that ROCKWELL's girlfriend, Bonnie SQUARE, and her entire family, were involved in MARIJUANA trafficking and was extremely skeptical about ROCKWELL's claims that he was a self employed medicine man. CS-3 has lived on the Reservation his entire life and had no knowledge of any "Legitimate" medicine men operating on

the Akwesasne. CS-3 stated that in September 2005, ROCKWELL was attempting to become a business partner in a cigarette factory on the Reservation. CS-3 stated that the cigarette factory in question was financed entirely by narcotics proceeds. CS-3 stated that the initial investment that the owners were looking for was approximately a million dollars in cash.

28.    CS-3 stated that Hank COOK paid Roger COOK $20,000 in cash to get a large scale MARIJUANA customer in 2004.   That individual that Roger COOK introduced to William COOK became his best customer. CS-3 stated that he saw Roger COOK and Jerome ROCKWELL at a cigarette co-op meeting on the Akwesasne Reservation approximately one month ago. CS-3, who is extremely familiar with the MARIJUANA and the Cigarette trade on the reservation, advised your affiant that there isn't a single cigarette factory on the reservation that isn't involved in MARIJUANA trafficking as well as smuggling of cigarettes into Canada. Your affiant knows that many of the cigarette factories on the Akwesasne Reservation are involved in the smuggling of contraband cigarette's into Canada as well as the importation of MARIJUANA into the United States.

29.    Your affiant asked CS-3 about other people associated with Jerome ROCKWELL. CS-3 stated that Aaron PHILLIPS, AKA Aaron DAY is involved in MARIJUANA Trafficking on the Akwesasne Reservation. As noted in paragraph 24 above, PHILLIPS allegedly donated $50,000 to ROCKWELL. According to CS-3, PHILLIPS is not employed and has always been involved in smuggling. CS-3 stated that Debra SMOKE, purported contributor of $70,000 to ROCKWELL, as noted in paragraph 24, is Bonnie SQUARE's sister.

## C.    CASH TRANSACTIONS

30.    Records reveal that ROCKWELL and his family members or associates entered into numerous substantial cash transactions:

a.    In April 2005, ROCKWELL paid $20,000 cash for a Frank Muller

Diamond Watch he purchased in Miami, Florida;

b.      In December 2004, ROCKWELL and Bonnie SQUARE paid $18,050 cash for a 2005 Chevy Silverado Truck, purchased from a car dealership in Syracuse, New York. This is the same vehicle that ROCKWELL was operating when he was stopped by police and the defendant currency was recovered. As noted above, Bonnie SQUARE is suspected to be ROCKWELL's girlfriend. Approximately one month ago, on or about April 3, 2006, Bonnie SQUARE was arrested in the Northern District of New York on allegations of Bulk Cash Smuggling when she failed to report approximately $20,000 in U.S. currency while crossing the border from Canada into the United States (06-M-093 (LAK)).

c.      Kay TIGER, ROCKWELL's allegedly estranged wife, purchased a number of vehicles with cash: $12,835 in December 2002 for a 1999 Ford Mustang; $21,629 in February 2005 for a 2003 GMC Sierra; $14,000 in January 2006 for a 2003 Mercedes Benz E-320 (total sale price: $42,769); and $15,000 in March 2006 for a 2006 Jeep Grand Cherokee (Total sale price: $44,301).

## LOCATION OF DEFENDANT CURRENCY

31.      The defendant currency presently is in the custody of the United States Marshals Service and has been deposited into the Seized Assets Fund. The Seized Assets Fund is within the jurisdiction of this Court and the defendant currency is being held in escrow pending disposition of this matter.

## CLAIM INFORMATION

32.      On or about October 24, 2005, a claim of ownership was submitted by attorney

James R. McGraw, Esq., on behalf of claimant, Jerome Honeyoust Rockwell, to the Drug Enforcement Administration, to obtain judicial determination of the seizure of the defendant $1,073,200.00 in United States currency.

## LIENHOLDER INFORMATION

33.    Upon information and belief, the defendant currency is not encumbered by any liens.

## POTENTIAL CLAIMANTS

34.    Upon information and belief to date, the persons who may have a claim in the defendant currency are not in the military service, are not infants or incompetent persons and are as follows:

**Jerome Honeyoust Rockwell**
**107 Cedric Avenue**
**Nedrow, New York 13120**

**WHEREFORE,** the United States of America prays that process of issue in due form of law, according to the course of this Court in actions in rem, issue against the defendant currency and that a warrant issue for the arrest of the defendant as more particularly described herein; that all persons having any interest therein be cited to appear herein and answer the Complaint; that a judgment be entered declaring the defendant condemned and forfeited to the United States of America for disposition in accordance with law; that the costs of this suit be paid to and

recovered by the United States of America; and that the United States be granted such other and

further relief as this Court may deem just and proper.

UNITED STATES OF AMERICA
GLENN T. SUDDABY
United States Attorney
Northern District of New York
James T. Foley Courthouse
445 Broadway, Suite 218
Albany, New York 12207
Telephone: (518) 431-0247

By: _____
Thomas A. Capezza
Assistant United States Attorney
Bar Roll No. 503159

## VERIFICATION

STATE OF NEW YORK ⌉
COUNTY OF ALBANY        SS:
CITY OF ALBANY        ⌋

**ANTHONY HART**, being duly sworn, deposes and states:

I am a Special Agent with the United States Drug Enforcement Administration, and the

facts as alleged in the Verified Complaint for Forfeiture are true to the best of my knowledge and

belief based upon information furnished to my office by or through officials of the United States

Department of Justice, and local law enforcement officers.

Dated: 5|9    , 2006

**ANTHONY HART**
**Special Agent**
**U.S. Drug Enforcement Administration**

Sworn to before me this
9th day of May, 2006.

Notary Public

PAULA D. BRIGGS
Notary Public, State Of New York
No. 6068241
Qualified In Onondaga County
My Commission Expires 12/31/20